*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES GASS,

        Plaintiff/Counterdefendant-Appellee,

V

DANIEL HANDLEY,

        Defendant-Appellant,

and

GREEN4ALL ENERGY SOLUTIONS and
JOELEX, INC.,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
September 2, 2021

No. 351080
Lapeer Circuit Court
LC No. 17-051143-CK

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff Charles Gass filed suit against defendants Daniel Handley, Green4All Energy Solutions, and JoeLex, Inc., alleging causes of action for breach of contract against Handley, unjust enrichment against Handley and Green4All, fraud against Handley, and promissory estoppel against Handley, along with other counts that were summarily dismissed and are no longer at issue. Green4All and JoeLex filed counterclaims against plaintiff alleging causes of action for conversion and unjust enrichment. With respect to plaintiff's action, a jury returned a verdict in favor of plaintiff on the breach-of-contract claim and awarded him $198,200 in damages. In regard to plaintiff's claim of unjust enrichment, the jury rendered a verdict for plaintiff, awarding him restitution in the amount of $145,798, but only as to Green4All. With respect to the fraud claim, the jury found in favor of plaintiff and awarded him $102,640 in damages. Finally, the jury returned a verdict for plaintiff on his promissory-estoppel claim but awarded no damages. On the counterclaims, the trial court directed a verdict in favor of plaintiff on JoeLex's conversion claim, and the jury rendered no-cause of action verdicts for plaintiff with regard to the remaining counts of conversion and unjust enrichment pursued by JoeLex and Green4All. The verdicts were

memorialized in a judgment. Defendants moved for judgment notwithstanding the verdict (JNOV), or new trial, remittitur, or other relief, which the trial court denied. Defendants appeal by right. We affirm plaintiff's damage awards for breach of contract and fraud, reverse the restitution award for unjust enrichment, and affirm the directed verdict on JoeLex's conversion counterclaim.

## I. BACKGROUND

This case arises from a 2012 oral agreement between plaintiff and Handley to enter into a business arrangement to sell and distribute the H2minusO valve (the valve) that plaintiff designed and developed. The valve purportedly reduces the water and sewer costs for a residence by decreasing the amount of air in water lines, which air artificially inflates the amount of water usage as read by a meter. Handley owned Green4All and, pursuant to the oral agreement, he was to transfer a 30% interest in Green4All to plaintiff. In return, plaintiff promised to assign his rights in and to the valve to JoeLex, a holding company formed by plaintiff and Handley to hold patent rights and collect royalties in connection with the valve, thereby allowing JoeLex to give Green4All exclusive rights to market and distribute the valve. Handley owned 51% of JoeLex, and plaintiff owned the remaining 49%. There was evidence that the oral agreement also provided that plaintiff and Handley would each receive 50% of any profits derived from sales of the valve.[1]

Plaintiff worked for Green4All from 2010 or 2011 until early 2017 when Handley terminated plaintiff's employment with the company. Plaintiff testified that he worked for years for Green4All in reliance on the oral agreement. Plaintiff claimed that throughout his employment with Green4All he tinkered on revisions to the valve. Multiple design changes to address various problems with the valve resulted in ongoing patent applications. Several patents, with plaintiff and Handley listed as the inventors, were eventually obtained. Handley claimed that pertinent improvements to the valve could not be attributed to plaintiff's efforts. Plaintiff, however, believed otherwise. There is no dispute that plaintiff assigned his valve-related rights to JoeLex as promised under the oral agreement. But Handley never actually transferred any ownership interest or shares in Green4All to plaintiff. There was evidence that throughout plaintiff's employment Handley falsely indicated to plaintiff, through certain tax and financial documents and verbal statements, that Handley had in fact transferred a 30% interest in Green4All to plaintiff. Defendants claimed that plaintiff knew early on that he held no interest in Green4All.

At trial, plaintiff submitted numerous financial documents concerning Green4All, and he testified in regard to those documents in an attempt to provide the jury with information from which it could calculate a value for Green4All. Handley opined that Green4All was worth around

---

[1] Handley agreed that there was a contract under which plaintiff could obtain a 30% interest in Green4All, but according to Handley, plaintiff was required to bring in customer leads, to give his proprietary "spring" formula to counsel for Green4All, and to work on installations in the field, which requirements plaintiff allegedly failed to satisfy. Plaintiff argued that even if Handley's description of the contract were accurate, plaintiff satisfied all three of the alleged requirements. Handley also testified that there was indeed an agreement that he and plaintiff share equally in any profits, but that agreement only pertained to profits on sales for which plaintiff had provided a "lead."

$200,000. Plaintiff testified that had he not contracted with Handley and worked for Green4All, he would have been employed in the field of hydraulics, just as he had before joining Green4All and as he was doing after being fired by Handley. Plaintiff claimed that he would have earned $583,000 above and beyond what he had earned working for Green4All.

After the trial court granted partial summary disposition in favor of defendants on several counts in plaintiff's complaint, the remaining claims of breach of contract, unjust enrichment, fraud, and promissory estoppel went to the jury, and it rendered the verdicts described above. The jury also rejected the counterclaims, with the court directing a verdict for plaintiff on JoeLex's conversion count. Subsequently, a judgment reflecting the jury's verdicts was entered. The judgment also awarded plaintiff approximately $29,000 in pre-judgment interest. Defendants' posttrial motions were denied.

## II.  ANALYSIS

### A.  APPLICABLE STANDARDS OF REVIEW

In this appeal, issues are raised concerning rulings by the trial court with respect to motions for new trial, JNOV, directed verdict, and remittitur. This Court reviews a trial court's decision whether to grant or deny a motion for new trial for an abuse of discretion. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). This includes a motion for new trial based on a claim that a verdict was against the great weight of the evidence. *Bosak v Hutchinson*, 422 Mich 712, 737; 375 NW2d 333 (1985).[2] We also review for an abuse of discretion a trial court's ruling on a motion for remittitur. *Freed v Salas*, 286 Mich App 300, 334; 780 NW2d 844 (2009). This Court reviews de novo a trial court's decision on a motion for directed verdict or JNOV. *Taylor v Kent Radiology*, *PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009).[3]

---

[2] In *Campbell v Sullins*, 257 Mich App 179, 193; 667 NW2d 887 (2003), this Court stated as follows:

> In deciding whether to grant or deny a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party. This Court gives substantial deference to a trial court's determination that the verdict is not against the great weight of the evidence. This Court and the trial court should not substitute their judgment for that of the jury unless the record reveals that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. [Citations omitted.]

[3] With respect to motions for JNOV and directed verdict, the evidence and all legitimate inferences are examined in a light most favorable to the nonmoving party. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003). "A motion for directed verdict or JNOV should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Id*. If reasonable jurors could have honestly reached different conclusions, we cannot interfere with the jury's verdict, which must be allowed to stand. *Zantel Marketing Agency*

## B. DISCUSSION AND RESOLUTION

This case presents some difficult and intricate issues, and we believe that the most concise, understandable, and cohesive approach in addressing the issues is to separately examine and analyze those issues in the context of each of the relevant causes of action.

### 1. BREACH OF CONTRACT

In plaintiff's first amended complaint, he alleged that in exchange for his assignment of rights related to the design of the valve, Handley had promised that he would convey a 30% interest in Green4All to plaintiff and that he would also share equally with plaintiff "in the profits derived from sales of the [v]alve, regardless of whether those profits flowed through Green4All or JoeLex." Plaintiff further contended that he fully performed under the parties' agreement, assigning his "valve" rights to JoeLex, which in turn authorized Green4All to sell products predicated on plaintiff's valve design. Plaintiff maintained that Handley breached the contract by failing to convey a 30% ownership interest in Green4All to plaintiff and by failing to pay plaintiff revenues to which plaintiff was entitled.

At trial, plaintiff did not present any expert testimony regarding the value of Green4All. Instead, plaintiff introduced numerous documents related to Green4All and testified about those documents and Green4All's net operating income and expenses from year to year. The documents included transaction reports, profit-and-loss statements, balance sheets, tax and financial records, and interrogatory answers. Plaintiff also submitted a redacted document that he created challenging certain expenses Green4All listed in its financial records from 2015 to 2017.[4] Plaintiff additionally elicited testimony that the valve was a successful product and that sales would likely increase in the future. Plaintiff introduced a Wall Street Journal article on price-to-earnings ratios and yields on major indexes, as well as Moody's corporate bond yields. The trial court would not allow plaintiff himself to give an opinion on the value of Green4All because he lacked the expertise to do so. During closing argument, plaintiff's counsel referenced all of the documentary evidence noted above, along with plaintiff's testimony, and informed the jurors, "So if you have general knowledge and experience in the affairs of life that allows you to interpret those documents and know what Green4All is worth, you can do so." Plaintiff's counsel did not suggest to the jury any particular valuation dollar amount for Green4All that would or might be produced upon analysis of the financial information submitted to the jurors. Rather, plaintiff simply requested a damage award for breach of contract in an amount equal to 30% of whatever valuation for Green4All the jurors might arrive at after examining the financial documents and information and doing their

---

*v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005). "Further, this Court recognizes the unique opportunity of the jury and the trial judge to observe witnesses and the fact-finder's responsibility to determine the credibility and weight of the testimony." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 491; 668 NW2d 402 (2003).

[4] There were redactions because the trial court disallowed the admission of certain aspects of the document.

own computations.[5]  As noted earlier, Handley did testify at trial that Green4All was worth approximately $200,000.  Plaintiff's attorney did not ask the jury to return a verdict for contract damages based on 50% of the profits derived from sales of the valve.

Plaintiff next argued to the jury that, *in the alternative*, it could award plaintiff contract damages for the amount of money that he would have earned working in the field of hydrology had he not entered into the contract with Handley and worked for Green4All, minus the money that he actually did earn at Green4All.  Under that formula, plaintiff requested damages of $583,000.  Plaintiff's counsel commented to the jurors that if they did not believe that plaintiff would have earned the six-figure amounts that he claimed but only the amount that he was actually currently earning, i.e., $60,000 annually, he would still be entitled to damages in the amount of $248,000.

The trial court instructed the jury on two forms of contract damages.  First, consistently with the language in M Civ JI 142.31 (contract damages; benefit of bargain), the court instructed the jury as follows:

> Contract damages are intended to give the party the benefit of the party's bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been fully performed. The injured party should receive those damages naturally arising from the breach. [Plaintiff] cannot recover a greater amount as damages than he would have gained by the full performance of the contract.

In relation to benefit-of-the-bargain damages, otherwise known as "expectancy" damages,[6] the trial court also instructed the jury that it "may include lost profits" as damages if "it is reasonably probable that profits would have been earned except for the breach; . . . the amount of loss can be shown with a reasonable degree of certainty; and, . . . there is a reliable basis . . . for computing the loss of profits."  As noted earlier, plaintiff's attorney did not present an argument to the jury

---

[5] In his brief on appeal, plaintiff states:

> Using their life experience and applying the factors set forth in Plaintiff's Exhibits 14-A-15 and 14-A-16, the jurors could have reached a value for Green4All that would translate to an award far greater than the jury's verdict. For example, using the discounted cash flow method based on a net operating income of $235,000 for the next 10 years, at a discount rate of 5%, would have resulted in a valuation of $1.8 million–far more than the $200,000 maximum Defendants allege. Contrary to Defendant's apparent belief, the jury did not have to simply take Dan Handley's word about what Green4All was worth. There was ample evidence in the record from which the jury could have found that Green4All was worth more than Handley claimed.

[6] See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 586; 624 NW2d 180 (2001) ("Damages awarded in a common-law breach of contract action are 'expectancy' damages designed to make the plaintiff whole.").

-5-

asking for damages premised on lost profits. While plaintiff introduced financial documents and testimony touching on Green4All's profits and losses, it was done as part of an effort to place a value on Green4All for purposes of the 30% interest sought by plaintiff, not to establish lost profits as damages. It does not appear that the evidence revealed any profits or losses generated solely in relation to sales of the valve, as opposed to overall Green4All sales. That said, it is possible that the jury made a calculation of lost profits on its own using the financial documentation and included that amount in the damage award.

Second, in the alternative to expectancy damages and consistently with M Civ JI 142.33 (reliance damages), the trial court instructed the jury as follows:

> If you do not award damages to [plaintiff] that would put him in as good a position had the contract been performed, then you may still award damages that put him in the same position as if the contract had never been made. Your award should compensate [plaintiff] for any losses he incurred because of reliance on Dan Handley to perform the contract. You may not award both types of damages if the result would put [plaintiff] in a better position than he would have been had the contract been performed.

The jury verdict form did not delineate between benefit-of-the-bargain damages and reliance damages; the jurors simply indicated that they were awarding damages in the amount of $198,200 for breach of contract. We thus have no means of knowing the basis for the jury's assessment of damages for breach of contract. The jury verdict form itself contained the following note or warning:

> Any damages you award to Plaintiff on this claim must not be duplicative of any damages you award to Plaintiff on any other claim. In other words, if you award Plaintiff a dollar as damages for breach of contract, you may not award him the same dollar as damages for fraud, unjust enrichment, or promissory estoppel.

On appeal, defendants argue that the award of $198,200 in contract damages was grossly excessive, speculative, unreliable, and against the great weight of the evidence. Defendants concede that Handley testified that Green4All was worth $200,000. Therefore, according to defendants, the evidence supported an award of damages in the amount of, at most, $60,000—30% of $200,000. Defendants further contend that there was no other evidence regarding Green4All's value, and to the extent that plaintiff relied on company financial documents to produce a value, it was improper because there was no supporting testimony by an expert. Defendants assert that it was beyond the capacity of lay jurors to calculate a value on the basis of the documents or using the discounted cash flow method of valuation. With respect to reliance damages, defendants argue that plaintiff's annual income in the years immediately preceding his employment with Green4All was minimal and less than he made with Green4All; therefore, there were no reliance damages and certainly not $198,200 worth of such damages.

In a contract action, the injured party may seek damages for an injury that was caused by another party's breach of a contractual promise or obligation. *Genesee Co Drain Comm'r v Fenton Charter Twp*, 504 Mich 410, 419; 934 NW2d 805 (2019). "[T]he remedy for the breach may be compensatory damages." *Id.* Compensatory damages are those that naturally arise from the breach

or those that were in the contemplation of the parties when the contract was formed. *Id.* In *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550-551; 904 NW2d 192 (2017), this Court observed:

> Damages are an element of a breach-of-contract claim. The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach. Damages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies. Although breach-of-contract damages need not be precisely established, uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal. [Quotation marks, citations, brackets, and ellipses omitted.]

A new trial may be granted when a verdict was "clearly or grossly . . . excessive." MCR 2.611(A)(1)(d). Significant deference is given to a jury's ascertainment of damages, and the adequacy of damages is typically within the province of the jury, although there is room for limited appellate review. *Taylor v Mobley*, 279 Mich App 309, 311; 760 NW2d 234 (2008). When a plaintiff establishes an injury, recovery is not precluded merely because proof of the amount of damages is not mathematically precise, and when reasonable minds could differ with respect to the level of certainty to which damages have been proved, we must be careful not to invade the fact-finding of the jury and substitute our own judgment. *Severn v Sperry Corp*, 212 Mich App 406, 415-416; 538 NW2d 50 (1995). In *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 764; 685 NW2d 391 (2004), our Supreme Court explained:

> The difficulty of reviewing damage awards, however, does not undermine the judicial obligation to do so under MCR 2.611. A reviewing court is therefore faced with the task of ensuring that a verdict is not "excessive" without concomitantly usurping the jury's authority to determine the amount necessary to compensate an injured party. Given the impossibility of using a simple algorithm for this task, judicial review of compensatory awards must rely on the fundamental principle behind compensatory damages—that of recompensing the injured party for losses proven in the record.

Here, with regard to damages for breach of contract, because we cannot discern whether the jury chose to award expectancy damages or reliance damages and because defendants did not challenge the structure of the jury verdict form, reversal is only warranted as to the breach-of-contract damages if the record supported neither type of damage. These were alternative damage theories; they were essentially mutually exclusive. And defendants were agreeable to the language in the jury verdict form.

The only possible avenue to uphold the full $198,200 damage award for breach of contract on an expectancy-damage theory is to conclude that the jury properly engaged in a valuation calculation or computation with respect to Green4All using the discounted cash flow method of valuation based on plaintiff's testimony and the financial documents and information pertaining

to Green4All.[7]  Reaching such a conclusion is problematic.  Plaintiff had no background in finance or the valuation of businesses, which the court emphasized when precluding him from giving an opinion on Green4All's value.  And simply supplying the jury with a mountain of financial data and a formula to derive a value on the hope and speculation that the lay jurors would be able to untangle the figures absent the guidance or opinion of an expert was certainly troublesome.  To say that these circumstances were unusual is an understatement.  Ultimately, we find it unnecessary to render a definitive ruling regarding expectation damages because we conclude that the record and the law supported an award of reliance damages in the amount of $198,200.[8]

With respect to reliance damages, plaintiff testified regarding what he believed he would have earned with a different employer had he not entered into the oral agreement and worked for Green4All.  Plaintiff testified that he was making $60,000 annually at the time of trial in 2019 and that he made $36,000 to $48,000 per year for 2017 and 2018 while working at Flow Dynamics.  Plaintiff never made more than $30,000 per year when employed by Green4All, making as little as $7,500 annually in 2012 and 2013.  Using as a baseline his prior salary of $100,000 at Paragon Technologies, where he worked from 2000 until 2003, and taking into account the rate of inflation and cost-of-living increases, plaintiff opined that he would have been making an annual salary of $100,000 in 2011 and $133,725 by 2016.  Plaintiff believed that he would have made $583,000 from 2011 to 2016 over and above what he actually earned working at Green4All.  On cross-examination, plaintiff was questioned regarding his tax returns, which showed that he and his wife only made $18,735 in 2007 and $14,512 in 2008.  Plaintiff also conceded that he worked odd jobs in 2009 and 2010, earning in the range of $10,000 to $15,000 each year and declaring bankruptcy in 2010.

Although defendants established that plaintiff received nominal income in the years immediately preceding his employment with Green4All, and plaintiff did not present documentation of his salary at Paragon Technologies, these frailties did not mean that plaintiff's evidence of reliance damages was speculative or based on conjecture.  Instead, the shortcomings went to the weight and credibility of plaintiff's testimony regarding his potential salary had he not worked for Green4All.  In *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor & Merrill, Inc*, 267 Mich App 625, 644; 705 NW2d 549 (2005), this Court observed:

> The jury is the judge of the credibility of witnesses and the truthfulness of their statements. It has the benefit of the testimony and its determination is final. The court may not disturb the jury's determination of value as long as it is within

---

[7] Simple math rules out the possibility that the jury awarded expectation damages to plaintiff on the basis of Handley's testimony that Green4All was worth $200,000, considering that plaintiff was only entitled to a 30% interest in Green4All under the oral agreement.

[8] We fully appreciate that the jury possibly awarded plaintiff expectancy damages, including perhaps lost profits, and not reliance damages, but we are not prepared to reverse a jury verdict on defendants' request when defendants were agreeable to a jury verdict form that prevents us from knowing the basis for the jury's damage award.

the fair range of the testimony. In each case, it was for the jury to weigh the testimony of the witnesses . . . . [Citation omitted.]

Assuming that the jury awarded plaintiff reliance damages for breach of contract, we note it rejected the $583,000 requested by plaintiff, reducing it by $384,800. If the jury concluded that plaintiff would have made only $48,000 to $60,000 annually during the years he worked for Green4All, which amounts come from income that he actually earned after he left Green4All, an award of $198,200 would be well within a fair range of the testimony and evidence. In sum, we cannot conclude that the trial court erred in allowing the damage award for breach of contract to stand albeit pursuant to reasoning that differs from that set forth by the trial court. See *Thomas v Leja*, 187 Mich App 418, 423; 468 NW2d 58 (1991).

## 2. FRAUD

In his first amended complaint, plaintiff alleged two counts of fraud. Count VIII of the complaint alleged that in 2011 Handley represented to plaintiff "that Green4All was a going concern with several viable products for sale." Plaintiff also asserted that he relied on the "representations regarding Green4All's viability and profitability when he agreed to allow Green4All to sell the Valve in exchange for a 30% interest in Green4All." Plaintiff further alleged that unbeknownst to him Green4All "had no viable products or sales, and was essentially worthless." This fraud count was plainly a claim of fraud in the inducement. See *Huron Tool & Engineering Co v Precision Consulting Servs, Inc*, 209 Mich App 365, 371; 532 NW2d 541 (1995) (fraud in the inducement can concern a situation where one party claims that he or she was tricked into entering into a contract; it is based on pre-contractual conduct that is recognized as a tort). We need not explore Count VIII's claim of fraud in the inducement any further because after the jury began to deliberate and made a request to see the fraud claims set forth in the first amended complaint, plaintiff agreed to strike Count VIII. Thus, no verdict was returned on this particular fraud claim.

In Count IX of the first amended complaint, plaintiff initially maintained "that he is a 30% owner of Green4All[,]" but "in the alternative" plaintiff alleged that "Handley defrauded [plaintiff] by falsely representing that [plaintiff] was a 30% owner of Green4All." Plaintiff then listed several instances in which Handley allegedly falsely represented that plaintiff owned a 30% interest in Green4All. Additionally, plaintiff contended that he relied on Handley's representations that Handley had transferred a 30% interest in Green4All to plaintiff. Plaintiff explained that in reliance on Handley's representations, plaintiff "agreed to grant Green4All an exclusive license to market the Valve." Plaintiff further maintained that in reliance on Handley's representations, plaintiff "later agreed to form . . . []JoeLex[] to hold the Valve patents, and agreed that JoeLex would receive only minimal royalties from sales of the Valve."[9] Moreover, and most importantly,

---

[9] These allegations sounded like fraud in the inducement. We are somewhat confused by the allegations because they appeared to suggest that Handley made representations that plaintiff owned 30% of Green4All before the oral agreement was reached in which Handley promised to transfer 30% of the company to plaintiff.

plaintiff alleged that he "worked full time for six years to advance the interests of Green4All based on Handley's representations that [plaintiff] was a 30% owner of Green4All."

At trial, plaintiff presented evidence that supported his claim that Handley had made numerous representations in various documents and to plaintiff directly that plaintiff owned 30% of Green4All. During closing argument, counsel for plaintiff stated:

> Now the fraud claim is really unique because it gives you a chance to give [plaintiff] some damages beyond the amount he can prove he actually lost. The judge is going to instruct you on something called exemplary damages. . . . [Y]ou can award these damages . . . if you find Dan Handley acted with malice or recklessness when he told [plaintiff] over and over again year after year [that] . . . he owned shares of Green4All. Did [Handley] do this to [plaintiff] because he was totally indifferent to the consequences of [plaintiff]? If you think so, you can award some exemplary damages. And [plaintiff] has testified about how horrifying this was, the impact of this. You saw his e-mail where he says "[Handley], this is out of the blue. What do you mean I am fired and I don't own any of this?" So you can decide what kind of impact that had on [plaintiff] and what that impact is worth if anything.

During jury instructions, the trial court read to the jurors the parties' theories of the case, and with respect to plaintiff's fraud claim, the court stated that plaintiff's theory was as follows:

> Mr. Handley defrauded [plaintiff] by representing to him repeatedly over a period of many years that Mr. Handley had transferred ownership of 30 percent of the shares of Green4All to [plaintiff]. In reliance on Mr. Handley's fraudulent misrepresentations, [plaintiff] worked for Green4All from 2011 to early 2017. [Plaintiff] was injured as a result of Mr. Handley's misrepresentations.

With respect to damages for fraud, the trial court instructed the jury:

> As to the plaintiff's claims for fraud against [Handley], fraud damages are the difference between the actual value of what the plaintiff in fact received and the value of what the plaintiff would have received if the shares of Green4All had been transferred to him as Mr. Handley represented they had been.

> You may award [plaintiff] exemplary damages for fraud if you find . . . [that] fraud occurred; and . . . [that] Mr. Handley acted with malice or wanton and reckless disregard.

The jury found that Handley committed fraud, and it awarded plaintiff $102,640 in fraud damages. The jury verdict form did not delineate between exemplary damages and standard fraud damages. Accordingly, it is possible that the $102,640 award was comprised entirely of exemplary damages, which was the only type of damage requested by plaintiff's attorney during his closing argument in regard to the fraud claim. Additionally, identical to the language related to the breach-of-contract claim, the jury verdict form on the fraud claim contained the following admonition:

-10-

Any damages you award to Plaintiff on this claim must not be duplicative of any damages you award to Plaintiff on any other claim. In other words, if you award Plaintiff a dollar as damages for breach of contract, you may not award him the same dollar as damages for fraud, unjust enrichment, or promissory estoppel.

We note that jurors are presumed to follow their instructions. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013).

On appeal, defendants argue that the record was completely devoid of mathematical evidence that would support a damage award of $102,640 for fraud; therefore, it was necessarily the result of speculation and conjecture. Defendants also contend that fraud was pled in the alternative and cannot coexist with the jury's verdict finding that Handley breached the oral contract, considering that the contract damages made plaintiff whole. Further, defendants state that "in breach of contract cases, the general rule is that fraud and exemplary damages are not recoverable absent allegation and proof of tortious conduct that is independent of the breach." (Internal quotation marks omitted.) Defendants argue that when claims of fraud and breach of contract are factually indistinguishable, an action in tort for nonperformance of the contract cannot be maintained. According to defendants, only when there is a separate and distinct duty imposed by law can a tort suit succeed in conjunction with a suit for breach of contract. Defendants assert that in this case plaintiff's contract action was indistinguishable from his fraud action and that, at most, the fraud claim could be viewed as alleging "a bad faith version of [plaintiff's] breach of contract action." Defendants maintain that under these circumstances exemplary damages were not available. Finally, defendants argue:

Further, the Verdict for Fraud at Count IX is also based on a gross mistake of fact. Fraud must be supported by the inferred fact that Handley actually lacked an intention to transfer shares when he stated he would do so. However, the Jury already inferred that Handley did have an intent, when the Jury rendered verdict for Breach of Contract, allowing Plaintiff's recovery for Handley's alleged broken promise.

We conclude that not one of defendants' arguments merits reversal. A plaintiff claiming actual fraud, or fraudulent misrepresentation, must establish the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false when it was made, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation. *Hord v Environmental Research Institute of Mich (After Remand)*, 463 Mich 399, 404; 617 NW2d 543 (2000); *M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). "In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Barclae v Zarb*, 300 Mich App 455, 479; 834 NW2d 100 (2013) (quotation marks and citation omitted).

In *Casey v Auto Owners Ins Co*, 273 Mich App 388, 401-402; 729 NW2d 277 (2006), this Court explained:

A plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law. An alleged bad-faith breach of a[] . . . contract does not state an independent tort claim. Here, all the . . . proposed claims stem from an alleged bad-faith breach of contract; therefore, those counts are futile as they fail to state an action independent from their breach of contract claim. Further, in breach of contract cases, the general rule is that exemplary damages are not recoverable absent allegation and proof of tortious conduct that is independent of the breach. This is because the plaintiff is adequately compensated for a breach of contract when damages are awarded by reference only to the terms of the contract. The . . . complaint does not state a tort claim independent from the[] breach of contract claim. Thus, [the plaintiffs] are not entitled to exemplary damages. [Quotation marks and citations omitted.[10]]

We first hold that plaintiff's claim for breach of contract was distinguishable from the fraud claim that plaintiff presented to the jury. Simply put, the contract action was premised on the theory that Handley agreed to give plaintiff a 30% interest in Green4All in return for an assignment of plaintiff's rights in the valve to JoeLex, which was created by Handley and plaintiff, with JoeLex then authorizing Green4All to sell and distribute the valve. The primary alleged breach was Handley's failure to transfer a 30% interest to plaintiff. In other words, there was nonperformance of the oral contract by Handley despite full performance by plaintiff. The fraud claim that was argued to the jury was that for years after the contract had been formed and breached, Handley affirmatively misrepresented to plaintiff that the 30% interest had in fact been conveyed and, in reliance on Handley's representations, plaintiff continued to work for Green4All and assist in the development of the valve. Such circumstances go beyond a bad-faith breach of contract. There was tortious conduct that was independent of the breach of contract—Handley failed to perform his obligations under the contract, thereby breaching the contract. Then Handley engaged in a campaign of affirmative acts to trick plaintiff into believing that he held a 30% interest in Green4All, thereby committing the tort of fraudulent misrepresentation. The alleged tortious conduct was not merely a continuation of nonperformance.

In regard to defendants' contention that plaintiff pleaded fraud in the alternative to his contract claim, we see nothing in the first amended complaint that supports defendants' argument. In Count IX, plaintiff did use the term "alternative"; however, the context involved an initial allegation that plaintiff in fact held a 30% interest in Green4All, which allegation was not borne out. But "in the alternative," if plaintiff lacked the interest, he alleged that Handley had misrepresented to plaintiff that he held a 30% interest. Plaintiff did not allege that the fraud claim was in the alternative to the count for breach of contract.

With respect to defendants' assertion that the jury's factual findings relative to the contract claim conflicted with its findings in connection to the fraud claim, it also lacks merit. There was

---

[10] Our Supreme Court has held "that, absent allegation and proof of tortious conduct existing independent of the breach, exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract." *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 420-421; 295 NW2d 50 (1980) (citation omitted).

no "gross mistake of fact." This argument is predicated on the fraud claim constituting fraud in the inducement to enter into a contract, but the fraud claim that was ultimately presented to the jurors did not concern fraud in the inducement. The jury could find that Handley had the intent to enter into an oral contract with plaintiff, while at the same time concluding that Handley's subsequent misrepresentations were made intentionally and with the intent that plaintiff rely on them and keep working on the valve at Green4All. There was no inherent factual inconsistency or conflict between the jury's findings on the contract and fraud claims.

With respect to damages for fraud, the jury was instructed that it could award an amount that was the equivalent of what "plaintiff would have received if the shares of Green4All had been transferred to him as Mr. Handley represented they had been." Such damages, however, if awarded by the jury, would have created a conflict with the damage award for breach of contract. We reach that conclusion because, assuming that the jury awarded plaintiff expectancy damages for breach of contract, plaintiff would also effectively be receiving expectancy-type damages for the fraud claim, i.e., the amount equaling a 30% interest in Green4All, resulting in double dipping. And assuming that plaintiff received reliance damages for breach of contract, i.e., the amount he would have made had he not worked for Green4All, an award of expectancy-type damages for the fraud claim, i.e., the 30% interest in Green4All, would in effect award damages to plaintiff as if he had not worked for Green4All, while also giving him damages as if had worked for Green4All, with the 30%-conveyance promise being fulfilled. This would result in over compensating plaintiff for his actual losses. *But*, as with the damages for breach of contract, we cannot discern whether the jury awarded fraud damages based on what plaintiff would have received had Handley transferred a 30% interest in Green4All to plaintiff as represented, or whether the jury solely awarded plaintiff exemplary damages on the fraud claim. The jury was instructed on exemplary damages for fraud, and exemplary damages were the only kind of damages that plaintiff's counsel requested as to the fraud claim during his closing argument, likely because counsel understood that duplicative damages were not allowed. And the jury was instructed that it could not award duplicative damages.

"The purpose of exemplary damages is to make the injured party whole," *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 630; 769 NW2d 911 (2009), as opposed to punishing the defendant, *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 419; 295 NW2d 50 (1980). The *Kewin* Court explained:

> In Michigan, exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant. Our review of the precedent indicates that those cases which permit recovery of exemplary damages as an element of damages involve tortious conduct on the part of the defendant. An award of exemplary damages is considered proper if it compensates a plaintiff for the humiliation, sense of outrage, and indignity resulting from injuries maliciously, wilfully and wantonly inflicted by the defendant. The theory of these cases is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done [to] the plaintiff's feelings. [*Kewin*, 409 Mich at 419 (quotation marks and citations omitted).]

Plaintiff testified that he was shocked and felt betrayed when he was informed that his employment with Green4All was being terminated and that he did not hold or own any interest in Green4All after having devoted six years working for the company and developing the valve. And the jury was instructed that it could award exemplary damages if it found that Handley acted with malice or wanton and reckless disregard. The evidence presented at trial supported an award of exemplary damages, and because it is possible that the jury solely awarded plaintiff exemplary damages on the fraud claim in the amount of $102,640, we conclude that there is no basis to reverse the jury's verdict finding in favor of plaintiff and awarding him damages.

### 3. UNJUST ENRICHMENT

In his first amended complaint, plaintiff alleged that he "granted Handley and Green4All the right to sell products based on his Valve design." Plaintiff further contended "that Handley promised to convey a 30% ownership interest in Green4All to [plaintiff] and . . . failed to do so." Plaintiff then alleged as follows: "In the alternative, Handley and Green4All received a benefit from [plaintiff], and an inequity will result [i]f Handley and Green4All are allowed to retain that benefit without compensating [plaintiff]."

At trial, in his closing argument, plaintiff's counsel argued to the jury as follows regarding the claim of unjust enrichment:

> So what reward did [plaintiff] actually get in reality for all his work and his agreement to let [Handley] make some profit from the valve? [Handley] decided he didn't need [plaintiff] anymore and in 2017 kicked him out of the company and told him he'd never been an owner. . . . We think [plaintiff] is owed a lot more for his efforts than the little bit of pay he received and it would be unfair if he never got any compensation. If you agree, you can award for unjust enrichment.

When informing the jurors regarding plaintiff's theory of the case with respect to unjust enrichment, the trial court explained that plaintiff claimed that he had provided a benefit to Handley and Green4All by working for Green4All for many years and that "it would be inequitable to allow Mr. Handley and Green4All to retain that benefit." When instructing the jury on unjust enrichment, the court stated that "[d]amages for unjust enrichment are the value of the benefit the defendants received from the plaintiff." The jury verdict form had the same notice in regard to unjust enrichment that the form contained in relation to the claims of breach of contract and fraud—no duplicative damages were permitted. The jury found that Handley and Green4All were both unjustly enriched, but it only awarded restitution to plaintiff as against Green4All. The jury concluded that Handley did not have to pay any restitution despite being unjustly enriched.

"A contract implied in law is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended[,]" and "[a] contract may be implied in law where there is a receipt of a benefit by a defendant from a plaintiff and retention of the benefit is inequitable, absent reasonable compensation." *In re McKim Estate*, 238 Mich App 453, 457; 606 NW2d 30 (1999) (quotation marks and citation omitted). A cause of action based on a contract implied in law is commonly referred to as a claim for unjust enrichment. *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). The elements of unjust enrichment are (1) the receipt of a benefit by a defendant from the plaintiff and (2) an inequity

resulting to the plaintiff because of the defendant's retention of the benefit. *Id.* When the elements of unjust enrichment have been shown, "the law operates to imply a contract in order to prevent unjust enrichment," but such a contract will only be implied "if there is no express contract covering the same subject matter." *Id.*; see also *Elia Cos, LLC v Univ of Mich Regents*, __ Mich App __, __; __ NW2d __ (2021); slip op at 6 ("Unjust enrichment is only a viable claim if there is no express contract covering the same subject matter.") (quotation marks and citation omitted). Unjust enrichment is grounded in the idea that a party "shall not be allowed to profit or enrich himself inequitably at another's expense." *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952) (quotation marks and citation omitted). A claim of unjust enrichment can arise when a party "has and retains money or benefits which in justice and equity belong to another." *Id.* (quotation marks and citation omitted). The remedy for unjust enrichment is restitution. See, e.g., *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 185; 504 NW2d 635 (1993).

We conclude that plaintiff was not entitled to the damage award for breach of contract *and* restitution for unjust enrichment. In our view, the first amended complaint alleged unjust enrichment in the alternative to breach of contract. There was an express contract—the oral agreement—covering the same subject matter as that raised in the claim for unjust enrichment. Given that the jury found that there was a contract, that it was breached, and that plaintiff was entitled to damages for breach of contract, either expectancy or reliance damages, a JNOV should have been granted to defendants on the claim for unjust enrichment. "[A] breach of contract claim and an unjust enrichment claim may be brought in the alternative where there is some question of whether an express contract actually existed." *Elia Cos,* __ Mich App at __; slip op at 6, citing *Keywell and Rosenfeld v Bithell*, 254 Mich App 300, 328; 657 NW2d 759 (2002). It is clear that plaintiff alleged the claim of unjust enrichment in case the trier of fact did not find the existence of a contract. Awarding plaintiff restitution on the unjust enrichment claim does not avert an inequity. Indeed, an inequity only arises if plaintiff is allowed to keep his contract damages and receive restitution. Plaintiff's theory was that restitution was owed because Green4All received the benefits associated with the valve without compensating plaintiff, but plaintiff has now been effectively compensated by the damage award for breach of contract and restitution for equity's sake is unnecessary. The fact that the restitution award only pertained to Green4All does not alter any of our analysis. The trial court erred by not vacating the restitution award for unjust enrichment.

### 4. THE TRIAL COURT'S DECISION TO HOLD A JURY TRIAL

Defendants next argue that they are entitled to a new trial because, two weeks before the scheduled trial date, the trial court abruptly changed the planned bench trial to a jury trial. According to defendants, this "changed the landscape of the trial," resulting in "an irregularity in [the] proceeding[s] that denied them a fair trial." In particular, defendants contend that the sudden change caused the jury verdict form to be prepared in haste, thereby failing to inform the jury that a verdict for plaintiff on the breach-of-contract claim would make plaintiff whole and obviate any need for a verdict on the fraud and unjust-enrichment counts.

The record indicated that the trial court announced at a pretrial conference more than two weeks before trial that it would be conducting a jury trial. There is no record of any objection to that decision. Moreover, on the first day of trial, the trial court twice inquired whether the parties

-15-

were ready to proceed with jury selection, and both times counsel for defendants answered, "Yes, your Honor." Again, defendants did not express any disagreement with or objection to the decision to proceed with a jury trial. It was not until after trial, in their motion for JNOV, a new trial, remittitur, or other relief, that defendants first challenged the trial court's decision to conduct a jury trial. It was also the first time that defendants challenged the trial court's jury instructions and the jury verdict form.

As plaintiff properly observes, the trial court had the authority to order a jury trial. Specifically, MCR 2.509(B) provides, in pertinent part:

> Issues for which a trial by jury has not been demanded as provided in MCR 2.508 will be tried by the court. In the absence of a demand for a jury trial of an issue as to which a jury demand might have been made of right, *the court in its discretion may order a trial by jury of any or all issues*. [Emphasis added.]

In *Adamski v Cole*, 197 Mich App 124, 130; 494 NW2d 794 (1992), this Court recognized that the defendants' failure to comply with the requirements of MCR 2.508 to demand a jury trial nonetheless "placed the decision to empanel a jury within the circuit court's discretion." Here, the trial court had the discretion to order a jury trial; it announced its decision to do so more than two weeks before trial, and defendants never timely argued that they would be prejudiced by a jury trial or otherwise objected to that decision. Moreover, plaintiff submitted proposed jury instructions, and defendants provide no good reason why they could not have submitted proposed jury instructions or objected to plaintiff's proposed instructions. Additionally, the jury was instructed not to award duplicate damages, we have determined that the fraud claim was not alleged in the alternative to the contract claim, and we have now reversed the restitution award for unjust enrichment. In sum, we conclude that the court did not abuse its discretion by ordering a jury trial and that reversal is unwarranted.

## 5. COUNTERCLAIM FOR CONVERSION

Defendants argue that the trial court erred by granting plaintiff's motion for a directed verdict with regard to JoeLex's counterclaim for conversion. In *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999), this Court stated:

> The tort of conversion is any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein. Statutory conversion, by contrast, consists of knowingly "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." MCL 600.2919a; MSA 27A.2919(1). To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care. The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship. [Quotation marks and citations omitted.]

The factual basis for JoeLex's conversion claim was that plaintiff converted $3,000 from a JoeLex bank account. On direct examination by plaintiff's counsel, Handley testified that he did not place funds in the JoeLex bank account so that plaintiff could take shareholder distributions

from the account. Handley explained that JoeLex "has never been profitable." Handley questioned how plaintiff could secure a distribution from JoeLex when the company had not made a profit. The following day, during questioning by his own counsel, Handley testified that in February 2017 he deposited $3,000 into the JoeLex bank account for plaintiff to use for "expenses, materials or whatever is necessary to continue working with [plaintiff] with JoeLex in the design capacity."

According to Handley, plaintiff used his debit card like a credit card and then withdrew the balance in cash, but the money was not used for legitimate business expenses. Handley further explained during his testimony that the accounts-receivable balance sheet for Green4All listed loans to shareholders, one of which was in plaintiff's name in the amount of $8,500. Handley noted that if an expense plaintiff claimed did not match up with a certain job or allowable expense, it would "roll over to the fact that we use [the money] for personal use" and would be turned into a loan from the company.

In our view, the trial court did not err by granting plaintiff's motion for a directed verdict with respect to the conversion claim. The circumstances did not involve a situation in which a distinct act of domain was wrongfully exercised over another's property. Instead, the evidence and the inferences arising from the evidence, even viewed in the light most favorable to JoeLex, did not support a claim for conversion as a matter of law because Handley's testimony established that if plaintiff used withdrawn funds that were not appropriate business expenses, the amount would be converted to a loan owed to Green4All or Joelex. Therefore, the trial court did not err by granting plaintiff's motion for a directed verdict on this conversion claim.

We affirm plaintiff's damage awards for breach of contract and fraud, reverse the restitution award for unjust enrichment, and affirm the directed verdict on JoeLex's conversion counterclaim. We do not retain jurisdiction. No party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Brock A. Swartzle

-17-